UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RAY ANTHONY WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 5: 15-100-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WARDEN FRANCISCO J. QUINTANA, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Ray Anthony Washington is an inmate confined by the Bureau of Prisons ("BOP") at the Federal Medical Center ("FMC") located in Lexington, Kentucky. Washington has filed a *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Record No. 1, Record No. 1-1; *see also* Record Nos. 1-4 and 1-5 (corrected page numbers)] The matter is currently pending for initial reviwe of Washington's petition.

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Washington's § 2241 petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007). Thus, at this stage of the proceedings, the Court accepts Washington's factual

allegations as true, and liberally construes his legal claims in his favor. However, for the reasons discussed below, the Court will deny the relief sought.

**I.**

Washington complains about a series of events alleged to have occurred at FMC-Lexington between mid-August 2014 and late February 2015. Washington states that on August 15, 2014, he left a religious service and returned to his 30-bed housing unit in the prison, which he identifies as the "Bustop." At that time, FMC-Lexington correctional officers searched the "Bustop" for a knife, and questioned Washington and the other inmates confined in that area about the weapon. [Record No. 1-4, pp. 6–7] Washington states that he and the other inmates were eventually taken to the Segregated Housing Unit ("SHU") where they remained for 108 hours. While in the SHU, inmates did not receive grievance forms or writing materials and only received one change of clothes. [*Id.*, p. 8] Washington alleges that Lieutenant Miller and the other officials involved in the search and questioning of inmates abused their authority. As a result, he contends that they should be sanctioned and directed to undergo proper correctional training. [*Id.*; *see also*, p. 12]

Washington alleges that he attempted to file two sets of grievances[1] through the BOP's administrative remedy process. In these grievances, he complained about the alleged

---

1   Washington's first administrative remedy request is identified as No. 797269 [Record No. 1-5, pp. 2–5]. On February 24, 2015, J.F. Caraway, Regional Director for the BOP's Mid-Atlantic Regional Office ("MARO"), denied Washington's BP-10 appeal stating, "Your allegation was investigated and found to be without merit. You do not provide, nor do we find, any evidence to indicate staff interfered with your attempt to file a Request for Administrative Remedy (BP-9)." [*Id.*, p. 5]

Washington's second administrative remedy request is identified as No. 806983, and in that remedy request, he complained of "unprofessional, inappropriate conduct or misconduct by staff." [*Id.*, p. 6–12] On January 13, 2015, the MARO rejected Washington's BP-10 appeal because Washington had not first filed a BP-9 administrative remedy request at the institutional level. [*Id.*, p. 8] On February 27, 2015, the

abuse of authority by prison staff in relation to the cell search, his placement in the SHU, and the alleged interference with his administrative remedy efforts. [*Id*., pp. 8–12] He now claims that the institutional staff failed to properly address the substance of those grievances, which ultimately resulted in rejections of his subsequent administrative appeals as untimely. [*Id*.]

In particular, Washington alleges that FMC-Lexington Counselor "Charles" demonstrated "deliberate indifference" regarding the "illegal mishandling of sensitive information," that FMC-Lexington Warden Francisco J. Quintana "deliberately neglected" to properly process his administrative remedies so that he could timely appeal to the BOP's Regional Office, that the BOP's Regional and Central Offices acted "incompetent, and unprofessional in [their] handling of the Administrative Remedy process and have denied Petitioner his right of due-process," and that "this conduct was clearly incompetent and unprofessional with a reckless misleading effect on any relief." [Record No. 1-4, pp. 9–12]

Washington asks this Court to grant his "abuse of authority claim," sanction Lieutenant Miller for his alleged abuse of authority, and direct Lieutenant Miller to undergo appropriate training concerning the "Conduct & Authority of Staff." [*Id*., p. 13] Washington also asks the Court to determine whether his due process rights were violated during the administrative remedy process. [*Id*., pp. 13–14]

**II.**

Only claims challenging the execution of a prisoner's sentence, such as the manner in which the BOP has computed his sentence credits or determined his parole eligibility, are

---

BOP's Central Office rejected Washington's BP-11 appeal in series No. 806983, giving the same reason. [*Id*., p. 12]

properly raised in a § 2241 petition. *United States v. Jalili*, 925 F.2d 889, 893–94 (6th Cir. 1999). Habeas relief under § 2241 is not available to federal prisoners who are complaining about the conditions of their confinement or alleged mistreatment while they are legally incarcerated. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004); *Lutz v. Hemingway*, 476 F. Supp. 2d 715, 718 (E.D. Mich. 2007).

Here, Washington alleges that FMC-Lexington officials abused their authority while investigating the existence of a knife in his dormitory area and by placing him in the SHU for 108 hours. He also alleges that FMC-Lexington officials impaired his use of the administrative remedy process, thus denying him due process of law in violation of his rights guaranteed under the Fifth Amendment of the United States Constitution. Finally, Washington states that, due to the alleged actions or omissions of officials at both FMC-Lexington and at the higher levels of the BOP, he was denied an effective remedy process in violation of his due process rights. In short, Washington's petition does not challenge the manner in which the BOP is executing his federal sentence.[2] Instead, he is challenging various conditions of his confinement at FMC-Lexington. This conclusion is supported by Washington's own classification of his claims on page one of his petition. In Section I,

---

2   On May 10, 2001, Washington and four others were indicted in this Court on numerous counts of conspiracy, drug trafficking, racketeering, money laundering, and unlawfully transporting firearms. *United States v. Washington*, No. 5:01-CR-47-DCR-1 (E.D. Ky. 2001). At that time, United States District Judge Karl Forester presided over Washington's criminal proceeding. Washington pleaded guilty to conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846 in exchange for the dismissal of all other charges, and on June 28, 2002, Judge Forester sentenced Washington to a 240-month prison term. Washington's conviction was affirmed on appeal. *United States v. Washington*, 112 F. App'x 501 (6th Cir. 2004).

entitled "THIS PETITION CONCERNS," Washington marked an "XX" next to the category listed as "jail/prison conditions." [Record No. 1-4, p. 1, § I][3]

Washington may not assert these condition of confinement claims in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Complaints concerning conditions of confinement "do not relate to the legality of the petitioner's confinement, nor do they relate to the legal sufficiency of the criminal court proceedings which resulted in the incarceration of the petitioner." *Lutz*, 476 F.Supp.2d at 718 (quoting *Maddux v. Rose*, 483 F. Supp. 661, 672 (E.D. Tenn. 1980)). Instead, Washington's claims alleging staff misconduct and abuse, interference with his administrative remedy efforts, and denial of due process of law, must be brought in a civil rights action under 28 U.S.C. § 1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The filing fee for such an action is $400.00, although Washington may seek pauper status and ask to pay that fee in installments.

The Court will deny Washington's improperly filed § 2241 petition, but the dismissal is without prejudice to Washington's right to file a *Bivens* civil rights action. He may wish to consider whether he wishes to incur a filing fee for a new action, however, because the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under either *Bivens* or 42 U.S.C. § 1983. *See Johnson v. Aramark*, 482 F. App'x

---

3    Washington also marked an "XX" next to the entry in that section identified as "prison discipline decision," *see id.*, but nowhere in his petition does Washington mention an adverse ruling or other sanction by a disciplinary hearing officer. Washington does not allege that he was ordered to forfeit any good-time credits as a result of a disciplinary proceeding, which is a requirement if a prisoner wishes to proceed under § 2241 and challenge an adverse disciplinary decision. *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

992, 993 (6th Cir. 2012); *Alder v. Corr. Med. Servcs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001).

Further, the denial of administrative remedies does not amount to a violation of a prisoner's right to due process of law, because there is no inherent constitutional right to an effective or responsive prison grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (unpublished table decision) ("Hence, [plaintiff's] allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Finally, Washington alleges that he was ordered to spend 108 hours in the SHU. However, a short-term placement in SHU does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life, which is the standard for determining whether a period of confinement in segregation violates a prisoner's right to due process. *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995); *Wilson v. Wellman*, 238 F.3d 426, 2000 WL 1829265, at *3 (6th Cir. Dec. 6, 2000) (unpublished table opinion); *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004).

### III.

The issues raised in Washington's Petition may not be addressed through a habeas petition under 28 U.S.C. § 2241. Accordingly, it is hereby

**ORDERED** as follows:

1. Ray Anthony Washington's 28 U.S.C. § 2241 petition for a writ of habeas corpus [Record No. 1] is **DENIED**;

2. the Court will enter an appropriate Judgment this date; and

3. this proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This 13th day of August, 2015.

Signed By:
*Danny C. Reeves* DCR
United States District Judge